IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| Kranos I.P. Corporation, | |
| Plaintiff, | Civ. Action No. _____ |
| | **COMPLAINT** |
| v. | |
| Xenith, LLC, | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Kranos I.P. Corporation, by its attorneys, for its Complaint against defendant Xenith, LLC, alleges upon knowledge as to plaintiff, and otherwise upon information and belief, as follows.

## NATURE OF THE ACTION

1.      This is a civil action for false advertising and unfair competition under federal and state law by plaintiff Kranos I.P. Corporation d/b/a Schutt Sports ("Schutt") against defendant Xenith, LLC ("Xenith") concerning Xenith's misrepresentation of the results of biomechanical testing of football helmets commissioned by the National Football League ("NFL") in 2015.

## THE PARTIES

2.      Plaintiff Schutt is a Delaware corporation with its principal place of business at 710 South Industrial Drive, Litchfield, Illinois, 62056.

3.      Defendant Xenith is a Delaware limited liability company with its principal place of business at 1201 Woodward Avenue, Detroit, Michigan 48226.

4.      During all relevant times, Schutt and Xenith have been and continue to be competitors in the market for sporting goods including football helmets.

## JURISDICTION AND VENUE

5.      This is an action for false advertising arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.,* (the "Lanham Act") and for common law unfair competition.

6.      This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Xenith by virtue of its transacting and doing business in this District and pursuant to N.Y. Civ. Prac. L. & R. § 302(a).  Xenith has transacted and done business in the State of New York and in this District and has disseminated its false advertising in the State of New York and in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District, including Xenith's dissemination of false advertising in this District.

## FACTUAL BACKGROUND

### A.  NFL-Sponsored Helmet Testing in 2015

9.      Schutt designs and manufactures football helmets and markets and sells them throughout the United States for use in professional, college, high school and youth football. Schutt's products include football helmets sold under the names Vengeance DCT, Vengeance VTD, Vengeance VTD II, Air XP Pro VTD and DNA Pro+.

10.     Xenith designs and manufactures football helmets and markets and sells them throughout the United States for use in professional, college, high school and youth football.

Xenith's products include a football helmet sold under the name EPIC.

11.     The risks posed to football players from contact sustained during play, especially the risk of concussion, has become a matter of national concern.

12.     In 2015, the Engineering Subcommittee of the NFL's Head, Neck and Spine Committee commissioned an independent testing laboratory, Biokinetics of Ottawa, Canada, to perform laboratory testing on 17 models of helmets intended for use in the NFL during the upcoming season.

13.     The helmets tested by Biokinetics in June 2015 included Schutt's Vengeance DCT, Vengeance VTD, Vengeance VTD II helmets and Xenith's EPIC helmet.

14.     The Biokinetics testing involved placing the helmets on an instrumented dummy head and neck, and impacting the helmets to simulate the conditions of on-field concussive impacts in the NFL.   The test measured several outcome measures of interest which were combined to result in a combined metric for each tested helmet.

15.     The NFL reported the results of the June 2015 testing to the public in the form of a poster titled "2015 HELMET LABORATORY TESTING PERFORMANCE RESULTS."   A true and correct copy of the poster is attached hereto as Exhibit 1.

16.     The report categorized the helmets into two groups based on their ability to manage the laboratory impacts.

17.     The report states that the top-performing helmets were statistically better performers than the helmets in the second group in terms of reducing the severity of the laboratory head impacts.

18.     The report states that within the top-performing group of helmets, there was no statistically significant difference in performance.

19.     The top-performing group of helmets included Schutt's Vengeance DCT, Vengeance VTD, Vengeance VTD II helmets and Xenith's EPIC helmet.

20.     There was no statistically significant difference in performance between Schutt's Vengeance DCT, Vengeance VTD, Vengeance VTD II helmets and Xenith's EPIC helmet in the June 2015 test.

21.     The June 2015 test did not include Schutt's Air XP Pro VTD and DNA Pro+ helmets.

22.     In September 2015, the NFL had Biokinetics test the Air XP Pro VTD and DNA Pro+ helmets using the test methodology of the June 2015 test.

23.     After testing the two additional Schutt helmets, Biokinetics performed a new statistical analysis of all the test data.

24.     In the results of the supplemental testing and analysis, the Schutt Air XP Pro VTD had the lowest (i.e. best) combined metric score and the Schutt DNA Pro Plus had the third lowest combined metric score.

25.     Xenith has known since September 2015 that Biokinetics under the direction of the NFL had tested the two additional Schutt helmets, and that the Schutt Air XP Pro VTD had the lowest (i.e. best) combined metric score and the Schutt DNA Pro Plus had the third lowest combined metric score.

26.     The NFL released a memorandum dated November 30, 2015 from Dr. Jeff Crandall, the Chairman of the Engineering Subcommittee, concerning the supplemental helmet testing.  Exhibit 2 hereto is a true and correct copy of the memorandum.  The memorandum states, "1. The Schutt Air XP Pro VTD received a performance score of 2.68 and would place 1st in the helmet rankings," and "2. The Schutt DNA Pro+ received a score of 2.84 and would place

3rd in the helmet rankings."

27.     The NFL released a full report and analysis of the supplemented test results titled "Testing of Schutt Air XP Pro VTD and Schutt DNA Pro+ Helmets" and dated December 23, 2015.  Exhibit 3 hereto is a true and correct copy of the report.

28.     The December 23 report states, "The Schutt Air XP Pro VTD ranked first overall and the Schutt DNA Pro+ ranked third overall in terms of the combined metric."  (Exhibit 3 at 2.)

29.     The December 23 report was sent by email to industry parties including Xenith. Attached hereto as Exhibit 4 is a true and correct copy of an email from Jim Funk, Scientific Coordinator, NFL Head, Neck & Spine Engineering Subcommittee to parties including "chuggins@xenith.com" attaching the report.  The email describes the report as "the updated results of our 2015 helmet testing program."

**B.  Xenith's Misrepresentations Concerning the NFL Helmet Testing**

30.     Xenith promoted and continues to promote the test results in various media, including a traditional press release, Internet marketing, outdoor advertising, social media, print media, and at trade shows.   In so doing, Xenith has falsely, materially, and actionably misrepresented the test results.

31.     Exhibit 5 hereto is a true and correct copy of a traditional press release dated August 26, 2015, titled "Detroit‑Based Xenith's EPIC Helmet Tops Performance Testing Coordinated By The NFL" which was disseminated by PR Newswire at the behest of Xenith.

32.     The August 26, 2015 press release contains false, deceptive and misleading statements, for example: "XENITH'S EPIC HELMET TOPS PERFORMANCE TESTING COORDINATED BY THE NFL," "Xenith EPIC helmet received the highest performance

ranking of all evaluated helmets," "Xenith to be named the number one helmet in a report published by the NFL," and "The Xenith EPIC received the highest rating of all tested helmets."

33.     Xenith's statements are false, deceptive and misleading because, without limitation, (1) EPIC was merely one of ten helmets reported to be in the top-performing group of the June 2015 test among which there was no statistically significant difference in performance, (2) EPIC did not outperform the other helmets in the top-performing group in any significant way, (3) the NFL did not name any helmet as the "number one helmet," (4) helmets were not rated separately so that EPIC could truthfully said to receive a "highest rating," (5) after the supplemental test of Schutt Air XP Pro VTD and Schutt DNA Pro+ Helmets, EPIC does not have the best combined metric of all helmets tested in the program.

34.     Xenith further disseminated the false, deceptive and misleading statements of the press release by posting the release on its website.  Exhibit 6 hereto is a true and correct copy of a web page on xenith.com containing the press release.

35.     Xenith further disseminated false, deceptive and misleading statements concerning the testing in other means and media as follows.

36.     A prominent image on the landing page of xenith.com states:  "#1 XENITH EPIC TOPS HELMET TESTING COORDINATED BY NFL." Exhibit 7 hereto is a true and correct copy of the web page bearing the image.

37.     The false, deceptive and misleading image was further disseminated through social media.  Exhibit 8 hereto is a true and correct copy of a tweet dated August 26, 2015 by @XenithFootball, disseminating the image and further stating, "Xenith EPIC helmet tops testing coordinated by NFL."  Exhibit 9 hereto is a true and correct copy of Xenith's Facebook page, disseminating the false, deceptive and misleading image.

38.     Through PR Newswire's MultiVu service, Xenith caused the false, deceptive and misleading image to be displayed to the public on Thomson/Reuters' digital billboard in Times Square.  The digital billboard is 23 stories high and is seen by an estimated 1.5 million people daily.  Exhibit 10 hereto is a true and correct copy of a photograph of the billboard display.

39.     The billboard display was further disseminated through social media.  Exhibit 11 hereto is a true and correct copy of a tweet dated August 26, 2015 by @XenithFootball, disseminating the billboard display and further stating, "Xenith EPIC helmet tops testing coordinated by NFL."  Exhibit 12 hereto is a true and correct copy of a Facebook post dated August 27, 2015 by Xenith, disseminating the billboard display and further stating, "Xenith EPIC helmet tops testing coordinated by NFL."

40.     The press release and billboard image were further disseminated by placement in AFCA Weekly, an on-line publication of the America Football Coaches Association.  Exhibit 13 hereto is a true and correct copy of an AFCA Weekly post, dated August 26, 2015, containing the press release and billboard image.

41.     Xenith further disseminated its false, deceptive and misleading statements at trade shows in various states.  Some of these trade shows were directed to the high school or college helmet markets, for which the NFL testing has little or no validity due to the difference in impacts sustained to helmets during play in professional football as opposed to high school or college football.

42.     For example, on or about December 2, 2015, Xenith exhibited at a football goods trade show held at Coaches Corner Sporting Goods in Terre Haute, Indiana.  Exhibit 14 hereto is a true and correct copy of a photograph of Xenith's trade show display bearing the false, deceptive and misleading statement, "XENITH EPIC TOPS HELMET TESTING

COORDINATED BY THE NFL."   This statement was further disseminated by posting the photograph on Twitter.  Exhibit 15 hereto is a true and correct copy of a tweet dated December 2, 2015 by @XenithFootball, disseminating the photograph.

43.     On January 10-13, 2016, Xenith attended the AFCA National Convention in San Antonio, Texas.  At the convention, representatives of Xenith repeated their false, deceptive and misleading statements concerning the NFL testing.

44.     AFCA publishes a print magazine, This Is AFCA, which is distributed to the entire membership of AFCA six times a year and is provided at the AFCA National Convention. Xenith procured an advertisement in the January-February 2016 issue of This is AFCA consisting of the NFL June 2016 results poster, with the addition of numbers purporting to rate the helmets and assign the Number 1 rating to Xenith EPIC.  A true and correct copy of the advertisement is attached hereto as Exhibit 16.

45.     Xenith is also presenting its false, deceptive and misleading message at football clinics directed to high school programs.  For example, in January 2016, Xenith exhibited its false, deceptive and misleading trade show display at a Glazier Clinic.  Exhibit 17 hereto is a true and correct copy of a tweet dated January 26, 2016 by @XenithFootball showing the display at a Glazier Clinic.

46.     Schutt has served a demand upon Xenith to cease and desist from the misrepresentations alleged herein.  Through counsel, Xenith refused the demand.

47.     Xenith's false, deceptive and misleading statements concerning the NFL testing relate to facts rather than opinions and are not mere puffery.

48.     Xenith's acts alleged herein are willful, intentional and malicious.

## COUNT I

## FALSE ADVERTISING

## (15 U.S.C. § 1125(A)(1)(B))

49.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-48 as if fully set forth herein.

50.     Xenith's statements concerning Xenith EPIC's performance in the NFL testing are false, deceptive and misleading.

51.     Xenith's statements concerning Xenith EPIC's performance in the NFL testing deceptively misrepresent the nature, characteristics, and qualities of the Xenith EPIC helmet with respect to the other helmets in the top performing group, including helmets made by Schutt.

52.     By disseminating its false, deceptive and misleading statements, Xenith has intentionally set out to deceive the public into believing that Xenith EPIC performed better in NFL-sponsored testing and is safer than other helmets in the top-performing group including helmets made by Schutt, and that the NFL has rated Xenith EPIC as the safest helmet, which would be a false belief.

53.     Xenith's statements concerning Xenith EPIC's performance in the NFL testing are directed to the purchasing public and those in the helmet trade, without limitation, and are likely to deceive a substantial number of consumers.

54.     Xenith's statements concerning Xenith EPIC's performance in the NFL testing are material because, without limitation, the safety of helmets is a concern of the purchasing public, such that a helmet that has actually proven to be safer than the competition will be viewed more favorably in purchasing decisions.

55.     Xenith has disseminated its false and misleading statements in interstate

commerce through means such as a traditional press release, Internet marketing, outdoor advertising, social media, print media, and at trade shows in multiple states.

56. Xenith's statements concerning Xenith EPIC's performance in the NFL testing are injurious to Schutt. Schutt's Vengeance DCT, Vengeance VTD, and Vengeance VTD II helmets were in the top-ranked group of the original test, and did not underperform Xenith EPIC in any statistically significant way. Moreover, according to the supplemental testing the Schutt Air XP Pro VTD has a better combined metric than Xenith EPIC, and Schutt DNA Pro+ had the third-best combined metric, which would place it among the top-performing group.

57. Xenith's acts of false advertising have caused and will cause irreparable injury to Schutt by fostering a false belief that Schutt's Vengeance DCT, Vengeance VTD, Vengeance VTD II, Air XP Pro VTD and DNA Pro+ are less safe than Xenith EPIC according to NFL-sponsored testing. Unless Xenith is restrained and enjoined and caused to issue appropriate corrective advertising, the false statements will cause further irreparable injury, leaving Schutt with no adequate remedy at law.

58. By reason of the foregoing, Schutt is entitled to preliminary and permanent injunctive relief against Xenith, restraining further acts of false advertising and requiring Xenith to correct its false and misleading advertising claims. Schutt is also entitled to recover damages caused by Xenith's aforesaid acts in an amount to be determined at trial, and an award of attorneys' fees.

## COUNT II

## UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

59.     Schutt repeats and realleges the allegations of Paragraphs 1-58 as if fully set forth herein.

60.     As its second ground for relief, Schutt claims unfair competition under New York common law.

61.     Through Xenith's statements concerning Xenith EPIC's performance in the NFL testing, Xenith has made and is continuing to make false, deceptive, and misleading descriptions and misrepresentations of fact in commercial advertising and promotion, which misrepresent the nature, characteristics, and qualities of the Xenith EPIC helmet.

62.     These violations have injured and will continue to injure Schutt and the public, causing deception, confusion, and damage in an amount that cannot presently be ascertained.

63.     Xenith's acts of false advertising and unfair competition have caused irreparable injury to Schutt and, unless restrained, will cause further irreparable injury, leaving Schutt with no adequate remedy at law.

64.     The acts of Xenith as described above constitute unfair competition in violation of Schutt's rights under New York common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

65.     By reason of the foregoing, Schutt is entitled to preliminary and permanent injunctive relief against Xenith, restraining further acts of false advertising and unfair competition and requiring Xenith to correct its false and misleading advertising claims.  Schutt is also entitled to recover damages caused by Xenith's aforesaid acts in an amount to be determined at trial, and an award of attorneys' fees.

## COUNT III

## DECEPTIVE ACTS AND PRACTICES UNDER
## NEW YORK GENERAL BUSINESS LAW §§ 349-350

66. Schutt repeats and realleges the allegations of Paragraphs 1-65 as if fully set forth herein.

67. As its third ground for relief, Schutt claims deceptive acts and practices and false advertising under New York General Business Law §§ 349-350.

68. Xenith, in the conduct of its business, trade, and commerce, and in the advertising of its goods in the State of New York and other states, has made and is continuing to make, false, deceptive and misleading descriptions and representations of fact in commercial advertising and promotion, which misrepresent the nature, characteristics and qualities of Xenith's and Schutt's goods and commercial activities.

69. These violations have injured and will continue to injure Schutt and the public, causing deception, confusion and damage in an amount that cannot presently be ascertained.

70. Xenith's acts of false advertising and unfair competition have caused irreparable injury to Schutt and, unless restrained, will cause further irreparable injury, leaving Schutt with no adequate remedy at law.

71. Xenith's acts have significant consequences for the public at large. Consumers are entitled to be able to rely upon accurate information in connection with helmet purchases and the relative safety of helmets. Consumers relying upon Xenith's false advertising claims will be confused and misled.

72. Xenith's acts as described above constitute deceptive acts and practices and false advertising in violation of N.Y. Gen. Bus. Law §§ 349-350.

-12-

73.     By reason of the foregoing, Schutt is entitled to preliminary and permanent injunctive relief against Xenith, restraining further acts of false advertising and unfair competition and requiring Xenith to correct its false and misleading advertising claims. Schutt is also entitled to recover damages caused by Xenith's aforesaid acts in an amount to be determined at trial, and an award of attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Schutt requests the following relief:

1.     That Xenith, its agents, officers, directors, servants, employees, attorneys, successors, companies and assigns, and all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from disseminating false statements concerning the NFL helmet testing;

2.     That Schutt be awarded damages in an amount to be determined at trial, including:

A.     all profits received by Xenith from sales and revenues of any kind made as a result of its false and misleading representations of material facts which misrepresent the nature, characteristics and qualities of Xenith's helmets;

B.     all damages sustained by Schutt as a result of Xenith's false advertising and acts of unfair competition, and that such damages be trebled;

C.     an amount sufficient to enable Schutt to conduct an effective corrective advertising campaign commensurate with Xenith's advertising expenditures incurred in connection with its false and misleading advertising; and

4.     That the Court issue an Order directing Xenith to conduct effective corrective advertising to remedy the harm caused by Xenith's false and misleading advertising.

5.      That all of Xenith's misleading and deceptive materials be removed and destroyed pursuant to 15 U.S.C. § 1118.

6.      That pursuant to 15 U.S.C. § 1116, Xenith be directed to file with the Court and serve on Plaintiffs' counsel, within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Xenith has complied with the injunction.

7.      That, because of the exceptional nature of this case resulting from Xenith's deliberate conduct, this Court award to Plaintiffs reasonable attorneys' fees, costs and disbursements incurred as a result of this action, pursuant to 15 U.S.C. § 1117 and the law of the State of New York.

8.      That Schutt have such other and further relief as this court may deem just.

                                        Respectfully submitted,


Dated:  February 3, 2016                /s/  Bradley S. Corsello
                                        John A. Zaccaria
                                        Bradley S. Corsello
                                        NOTARO, MICHALOS & ZACCARIA P.C.
                                        100 Dutch Hill Road, Suite 240
                                        Orangeburg, New York 10962
                                        Telephone: (845) 359-7700
                                        Email:  bradley.corsello@notaromichalos.com